UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UMB BANK, N.A., *not in its individual capacity, but solely as security trustee*,

Plaintiff,

-v.-

JETONEX LLC, VQBWL LIMITED, VQBZV LIMITED, JOX 28551 LLC, VQBWS LIMITED, and VQBWT LIMITED,

Defendants.

25 Civ. 2511 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff UMB Bank, N.A. ("UMB Bank," or the "Security Trustee") is a security trustee that is suing to recover money that borrowers VQBWL Limited ("VQBWL"), VQBZV Limited ("VQBZV"), JOX 28551 LLC ("JOX"), VQBWS Limited ("VQBWS"), and VQBWT Limited ("VQBWT," and collectively with VQBWL, VQBZV, JOX, VQBWS, the "Borrowers"), as well as guarantor JetOneX LLC ("JetOneX," or the "Guarantor"), owe under the parties' financing agreement. Plaintiff also seeks to recover related collateral.

The action asserts that the Borrowers and the Guarantor breached various loan and security agreements, as well as related guaranties, stemming from certain nonparty lenders' agreements to finance the Borrowers' purchase of aircraft and aircraft engines. Specifically at issue are two sets of loan documents and guaranties, one from 2020 and one from 2021. Defendants VQBWS and VQBWT (the "2020 Borrowers"), along with Guarantor, are parties to the 2020 documents. Defendants VQBWL, VQBWM, VQBZV, and JOX (the

"2021 Borrowers"), along with the Guarantor, are parties to the 2021 documents. Plaintiff has filed an unopposed motion for partial summary judgment. For the reasons that follow, the Court grants that motion as it applies to the 2020 loan but denies it as it applies to the 2021 loan.

## BACKGROUND[1]

### A. Factual Background

#### 1. The Loans

##### a. The 2020 Loan

The 2020 Borrowers, nonparty White Oak Aviation Limited (the "2020 Lender"), and the Security Trustee entered into a Loan Agreement dated October 30, 2020 (the "2020 Loan Agreement"). (Pl. 56.1 ¶¶ 1-2; *see* Green Decl., Ex. A (2020 Loan Agreement)). Concurrently, the same parties entered into an Aircraft Security Agreement, also dated October 30, 2020 (the "2020 Security Agreement," and together with the 2020 Loan Agreement and other

---

1 The facts set forth in this Opinion are drawn primarily from Plaintiff's submissions in connection with its unopposed motion for summary judgment. The Court sources facts from Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1" (Dkt. #48)) and the Declarations of Daniel C. Green ("Green Decl." (Dkt. #49)) and Asa Watts ("Watts Decl." (Dkt. #50)), as well as the exhibits attached thereto.

Citations to Plaintiff's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in Plaintiff's Rule 56.1 Statement is supported by evidence, the Court finds that fact to be true, given the absence of an opposing 56.1 statement. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of its motion for summary judgment as "Pl. Br." (Dkt. #47).

related documents, the "2020 Loan Documents"). (Pl. 56.1 ¶¶ 3-4; *see* Green Decl., Ex. B (2020 Security Agreement)).

Under the 2020 Loan Documents, the 2020 Lender extended credit to the 2020 Borrowers in the amount of $49,400,000 on or about October 30, 2020. (Pl. 56.1 ¶ 5). Additionally, the 2020 Borrowers granted the 2020 Lender, through the Security Trustee, first priority liens on and security interests in, among other things, two Boeing 747-400 aircraft, five Rolls Royce aircraft engines, and four Pratt & Whitney aircraft engines (the "2020 Assets"). (*Id.* ¶ 6). The 2020 Assets secured all obligations and amounts due and owing to the 2020 Lender (the "2020 Obligations"). (*Id.*).

To further secure the 2020 Obligations, the Guarantor executed a guaranty dated October 30, 2020, in favor of the 2020 Lender and the Security Trustee (the "2020 Guaranty"). (Pl. 56.1 ¶¶ 9-10; *see* Green Decl., Ex. E (2020 Guaranty)). As set forth therein, the 2020 Guaranty is irrevocable, absolute, and unconditional, and it effectively guarantees all payment and performance of obligations of the 2020 Borrowers under the 2020 Loan Documents. (2020 Guaranty § 2). In the 2020 Guaranty, the Guarantor further waived any and all "defense[s] or counterclaim[s] whatsoever, other than indefeasible payment and performance of the Guaranteed Obligations." (*Id.* § 4).

Subsequently, the parties made various amendments to the 2020 Loan Documents. On or about April 6, 2022, the 2020 Borrowers, the 2020 Lender, the Guarantor, and the Security Trustee entered into an Omnibus Amendment (the "2020 Omnibus Amendment") to the 2020 Loan Agreement, the 2020

Security Agreement, and the 2020 Guaranty. (Pl. 56.1 ¶¶ 13-14; *see* Green Decl., Ex. C). The 2020 Omnibus Amendment extended credit to the 2020 Borrowers in the amount of $15,000,000 on or about April 7, 2022. (Pl. 56.1 ¶ 15). The 2020 Borrowers used that money to refinance the 2020 Obligations. (*Id.*).

Then, on or about January 1, 2023, the 2020 Borrowers, the 2020 Lender, and the Security Trustee entered into Amendment No. 2 to the 2020 Loan Agreement (the "2020 Amendment 2"). (Pl. 56.1 ¶¶ 7-8; *see* Green Decl., Ex. D (2020 Amendment 2)). Under the 2020 Amendment 2, Schedule II to the 2020 Loan Agreement, titled "Loan Amounts," was deleted and replaced with a new schedule reflecting the principal balance of $42,672,910. (Pl. 56.1 ¶ 16; 2020 Amendment 2).

The 2020 Loan Documents and the 2020 Guaranty entitle the Security Trustee to recover all costs and attorneys' fees incurred in pursuing their enforcement. (Pl. 56.1 ¶ 16; 2020 Loan Agreement § 8.11; 2020 Guaranty § 2(b)). The 2020 Loan Documents and the 2020 Guaranty are all governed by New York law. (Pl. 56.1 ¶ 17).

**b. The 2021 Loan**

Separate from the 2020 loan, though very similar in structure, is the 2021 loan. The 2021 Borrowers, nonparty White Oak Aviation (DOE 2) Limited (the "2021 Lender," and together with the 2020 Lender, the "Lenders"), the Security Trustee, and others entered into a Loan Agreement dated October 6, 2021 (the "2021 Loan Agreement"). (Pl. 56.1 ¶¶ 18-19; *see* Green Decl., Ex. F

(2021 Loan Agreement)). The same parties concurrently entered into an Aircraft Security Agreement dated October 8, 2021 (the "2021 Security Agreement," and together with the 2021 Loan Agreement and other related documents, the "2021 Loan Documents"). (Pl. 56.1 ¶¶ 20-21; *see* Green Decl., Ex. G (2021 Security Agreement)).

Under the 2021 Loan Documents, the 2021 Lender extended credit to the 2021 Borrowers in the amount of $50,000,000 on or about October 6, 2021. (Pl. 56.1 ¶ 22; 2021 Loan Agreement § 2 & Schedule II). Also under the 2021 Loan Documents, the 2021 Borrowers granted the 2021 Lender, through the Security Trustee, first priority liens and security interests in, among other things, two Boeing 747-400 aircraft (the "2021 Assets"). (Pl. 56.1 ¶ 23). The 2021 Assets secured all obligations and amounts due and owing to the 2021 Lender (the "2021 Obligations"). (*Id.*).

To further secure the 2021 Obligations due and owing to the 2021 Lender, the Guarantor executed a guaranty dated October 8, 2021, in favor of the 2021 Lender and the Security Trustee (the "2021 Guaranty"). (Pl. 56.1 ¶¶ 35-36; *see* Green Decl., Ex. K (2021 Guaranty)). Like the 2020 Guaranty, the 2021 Guaranty is irrevocable, absolute, and unconditional, and it effectively guarantees all payment and performance obligations of the 2021 Borrowers under the 2021 Loan Documents. (Pl. 56.1 ¶ 37; 2021 Guaranty § 2). Further, the Guarantor waived any and all "defense[s] or counterclaim[s] whatsoever, other than the indefeasible payment and performance of the Guaranteed Obligations." (Pl. 56.1 ¶ 38; 2021 Guaranty § 4). The 2021 Loan

Documents and the 2021 Guaranty entitle the Security Trustee to recover all costs and attorneys' fees incurred in pursuing their enforcement. (Pl. 56.1 ¶ 39; 2021 Loan Agreement § 8.11; 2021 Guaranty § 2(b)).

Subsequently, the parties made various amendments to the 2021 Loan Documents. On December 23, 2021, certain of the 2021 Borrowers, the 2021 Lender, and the Security Trustee entered into an Omnibus Amendment to the 2021 Loan Documents (the "2021 Omnibus Amendment"). (Pl. 56.1 ¶¶ 27-28; *see* Green Decl., Ex. H). Then, on December 7, 2022, VQBWL, VQBWM, the Guarantor, the 2021 Lender, White Oak Aviation Management Services (Irish), Ltd. (the "Loan Agent"), and the Security Trustee entered into a Conditional Principal Deferral Letter Agreement (the "Conditional Principal Deferral Agreement"). (Pl. 56.1 ¶¶ 24-25; *see* Watts Decl., Ex. A (Conditional Principal Deferral Agreement)). Under the Conditional Principal Deferral Agreement, all other Assets were cross-collateralized to the 2021 Assets. (Pl. 56.1 ¶ 26; Conditional Principal Deferral Agreement ¶ 2).

Additionally, the 2021 Borrowers, the 2021 Lender, and the Security Trustee entered into Amendment No. 2 to the 2021 Loan Agreement on or about January 1, 2023 (the "2021 Amendment 2"). (Pl. 56.1 ¶¶ 29-30; *see* Green Decl., Ex. I). Finally, on June 23, 2023, the Guarantor and the Security Trustee entered into Supplement No. 9 to the 2021 Security Agreement (the "2021 Supplement 9"). (Pl. 56.1 ¶¶ 31-33; *see* Green Decl., Ex. J ("2021 Supplement 9")). Under the 2021 Supplement 9, the Guarantor pledged certain additional aircraft engines (the "2023 Assets," and together with the

2020 Assets and the 2021 Assets, the "Assets"). (Pl. 56.1 ¶ 34; 2021 Supplement 9, at 1-2). The 2021 Loan Documents, the 2021 Supplement 9, and the 2021 Guaranty are all governed by New York law. (Pl. 56.1 ¶ 40).

**2. The Defaults**

The 2020 Security Agreement and the 2021 Security Agreement define an "Event of Default" to include, among other things,

> (a) the failure of the Borrowers to make any payment or prepayment of the principal amount of, interest on, or other amount due and payable under any Loan … when due and such failure shall continue unremedied for three (3) Business days, or (b) the failure of the Borrowers to pay any other amount payable by them to any Financing Party pursuant to the terms of the Loan Operative Documents when due and such failure shall continue unremedied for ten (10) Business Days after the Borrowers received written demand from any Financing Party.

(2020 Security Agreement § 4.02(a)-(b); 2021 Security Agreement § 4.02(a)-(b); Pl. 56.1 ¶ 45).

Under the 2020 Loan Agreement, the 2020 Borrowers were required to make a payment of $1,173,634 on March 15, 2023. (Pl. 56.1 ¶ 41). As it happened, the 2020 Borrowers did not make the payment by that date or any subsequent date. (*Id.* ¶ 42). And under Schedule A of the 2021 Amendment 2, the 2021 Borrowers were required to make a principal payment of $1,098,750.58 on March 15, 2023. (*Id.* ¶ 43). But the 2021 Borrowers did not make any scheduled payments towards their obligations under the 2021 Loan Agreement by that date or any subsequent date. (*Id.* ¶ 44).

Beyond the payment defaults, the Borrowers also had other, more minor defaults. *First*, the 2020 Loan Agreement and the 2021 Loan Agreement require the Borrowers to deliver annual audited financial statements within 90 days of the close of the fiscal year. (2020 Loan Agreement § 5.1(r)(i); 2021 Loan Agreement § 5.1(r)(i); Pl. 56.1 ¶ 47). Yet the 2020 Borrowers and the 2021 Borrowers failed to deliver annual audited financial statements for fiscal years 2022, 2023, or 2024 when due or at any point thereafter. (Pl. 56.1 ¶ 48).

*Second*, the 2020 Loan Agreement and the 2021 Loan Agreement require the Borrowers to deliver quarterly certified financial statements within 60 days of the end of the first three fiscal quarters of each fiscal year. (2020 Loan Agreement § 5.1(r)(ii); 2021 Loan Agreement § 5.1(r)(ii); Pl. 56.1 ¶ 49). Yet the 2020 Borrowers and the 2021 Borrowers failed to deliver quarterly certified financial statements for the second quarter of fiscal year 2022 or any subsequent quarter when due or at any point thereafter. (Pl. 56.1 ¶ 50).

*Third*, the 2020 Loan Agreement and the 2021 Loan Agreement require the Borrowers to deliver Monthly Reports (as defined in the Loan Documents). (2020 Loan Agreement § 5(t); 2021 Loan Agreement § 5(t); Pl. 56.1 ¶ 51). Yet the 2020 Borrowers and the 2021 Borrowers failed to deliver Monthly Reports for the month of April 2022 or any subsequent month when due or at any subsequent point. (Pl. 56.1 ¶ 52).

In addition, the 2020 Security Agreement and 2021 Security Agreement define an "Event of Default" to also include any failure by any borrower or guarantor "to perform or observe any other undertaking, obligation or covenant

of such party contained in any Loan Operative Document" that remains unremedied following notice. (2020 Security Agreement § 4.02(e); 2021 Security Agreement § 4.02(e); Pl. 56.1 ¶ 53). The aforementioned failures to deliver annual audited financial statements, quarterly certified financial statements, and Monthly Reports thus also constitute Events of Default under the 2020 Security Agreement and 2021 Security Agreement. (Pl. 56.1 ¶ 54).

On March 13, 2025, the Security Trustee transmitted a Notice of Defaults, Acceleration, Demand for Payment and Reservation of Rights (the "Notice") to the Borrowers and the Guarantor, which notice Defendants admit to receiving. (Pl. 56.1 ¶¶ 55-56; *see* Green Decl., Ex. L (Notice)). The Notice provided that as a result of the Events of Default, the Loans were canceled. (Notice 3). Further, the 2020 Obligations and the 2021 Obligations were accelerated, inclusive of accrued but unpaid interest, any related Breakage Costs (as defined in the Loan Documents), and all fees and other obligations of the Borrowers and the Guarantor. (*Id.*).

**3. The Outstanding Balances**

Immediately prior to August 30, 2024, the outstanding balance of the 2020 Obligations was $47,876,664, consisting of (i) $42,672,910 in principal; (ii) $4,311,532 in accrued interest; and (iii) $892,222 in expenses. (Pl. 56.1 ¶ 58). That same date, the outstanding balance of the 2021 Obligations was $19,006,931, consisting of (i) $16,553,191 in principal; (ii) $1,589,106 in accrued interest; and (iii) $864,634 in expenses. (*Id.* ¶ 59).

On or about August 30, 2024, the 2021 Borrowers sold one of the aircraft Assets. (Pl. 56.1 ¶ 60). The Borrowers used the proceeds of the August 30, 2024 collateral sale to (i) make a payment towards their 2021 Obligations in the amount of $19,006,931 and (ii) make a payment towards the 2020 Obligations in the amount of $11,659,928. (*Id.* ¶ 61).

The $19,006,931 payment fully satisfied the 2021 Obligations. (Pl. 56.1 ¶ 62). The $11,659,928 payment was applied to the 2020 Obligations as follows: (i) $9,421,928 towards the portion of the loan secured by one of the aircraft, with $7,348,396 applied to principal and $2,072,852 applied to accrued interest, and (ii) $2,238,680 towards the accrued interest on the portion of the loan secured by a different aircraft. (*Id.* ¶ 63). Accordingly, after the Lenders applied $7,348,396 from the August 30, 2024 collateral sale to the principal amount due and owing under the 2020 Loan Documents, such principal amount was reduced to $35,324,514. (*Id.* ¶ 64).

The $35,324,514 due and owing under the 2020 Loan Agreement accrued interest of $363,714 on August 30, 2024, and $363,714 on October 1, 2024, totaling $727,428 in interest for those two periods prior to the loan's maturity. (Pl. 56.1 ¶ 65). The $35,324,514 due and owing under the 2020 Loan Agreement accrued further post-maturity interest in the amount of $5,091,995 from November 1, 2024, to December 31, 2025. (*Id.* ¶ 66).

Additionally, on May 21, 2024, certain entities, including the Lenders, the Guarantor, and VQBWS, entered into a Side Letter Relating to Aircraft Charter Agreement (the "Triparty Agreement"). (Pl. 56.1 ¶¶ 67-68; *see* Watts

Decl., Ex. B). Under the Triparty Agreement, the Lenders paid collateral maintenance fees accrued in relation to the operation of one of the aircraft in the amount of $6,359,985. (Pl. 56.1 ¶ 67). Finally, as of January 9, 2026, the Security Trustee has incurred no less than $300,000 in attorneys' fees towards enforcing the Loan Documents post-default. (*Id.* ¶ 69).

Accordingly, as of January 9, 2026, the total amount due and payable under the Loan Documents was no less than $47,803,922, consisting of (i) $35,324,514 in outstanding principal; (ii) $6,359,985 in collateral maintenance fees; (iii) $5,819,423 in interest (consisting of $727,428 in pre-maturity interest and $5,091,995 in post-maturity interest); and (iv) no less than $300,000 in attorneys' fees. (Pl. 56.1 ¶ 70).

**B. Procedural Background**

Plaintiff, as Security Trustee, commenced the instant action on behalf of the Lenders by filing the Complaint on March 26, 2025. (Dkt. #1; Pl. 56.1 ¶ 74). Plaintiff raises seven causes of action. (Compl. ¶¶ 36-80). Count I seeks an Order of Possession under the Cape Town Convention on International Interests in Mobile Equipment, also known as the Cape Town Treaty. (*Id.* ¶¶ 36-40). Count II alleges that the 2020 Borrowers breached the 2020 Loan Agreement. (*Id.* ¶¶ 41-47). Count III alleges that the 2021 Borrowers breached the 2021 Loan Agreement. (*Id.* ¶¶ 48-54). Count IV alleges that the Guarantor breached the 2020 Guaranty. (*Id.* ¶¶ 55-60). Count V alleges that the Guarantor breached the 2021 Guaranty. (*Id.* ¶¶ 61-66). Count VI seeks foreclosure of the 2020 Assets against the 2020 Borrowers. (*Id.*

¶¶ 67-73). Count VII seeks foreclosure of the 2021 Assets and 2023 Assets against the 2021 Borrowers. (*Id.* ¶¶ 74-80).

Defendants answered on May 27, 2025. (Dkt. #27). After holding an Initial Pretrial Conference on July 9, 2025 (July 9, 2025 Minute Entry), the Court entered a Case Management Plan the next day, and discovery commenced (Dkt. #33). On November 6, 2025, Plaintiff informed the Court of its intention to move for summary judgment. (Dkt. #40-41). Defendants responded about one week later. (Dkt. #45).

On November 19, 2025, the Court held a pre-motion conference to discuss Plaintiff's anticipated motion and to set a briefing schedule. (November 19, 2025 Minute Entry). In accordance with that briefing schedule, Plaintiff filed its motion for partial summary judgment, along with supporting papers, on January 9, 2026. (Dkt. #46-50). Plaintiff seeks summary judgment on six of its seven counts: Counts II through VII. (Pl. Br. 1). Furthermore, Plaintiff seeks damages in the amount of $36,051,942 due and payable under the Loan Documents, comprising (i) $35,324,514 in outstanding principal and (ii) $727,428 in pre-maturity interest. (*Id.* at 16).[2]

---

[2] Plaintiff's evidentiary submissions make plain that the $36,051,942 figure is attributable to the 2020 loan. (*See, e.g.*, Pl. 56.1 ¶¶ 64 ("After the Lenders applied $7,348,396 from the August 2024 collateral sale to the principal amount due and owing *under the 2020 Loan Documents*, such principal amount was reduced to $35,324,514[.]" (emphasis added)), 65 ("The $35,324,514 due and owing *under the 2020 Loan Agreement* accrued interest of $363,714 on August 30, 2024 and $363,714 on October 1, 2024, totaling $727,428 in interest for those two periods prior to the loan's maturity[.]" (emphasis added)). Given this fact — as well as Plaintiff's acknowledgement that "[t]he $19,006,931.00 payment from the August 30, 2024 collateral sale applied to the 2021 Borrowers' obligations under the 2021 Loan Agreement fully satisfied the outstanding balance under that Loan Agreement" (Pl. 56.1 ¶ 62) — the Court is

After Plaintiff filed its motion, the parties repeatedly asked for extensions to the briefing schedule, explaining that they were close to reaching a settlement. (Dkt. #53, 55, 57, 59). The Court granted each motion. (Dkt. #54, 56, 58, 60). Granting the fourth request on March 26, 2026, the Court noted that it "d[id] not anticipate granting any further extensions." (Dkt. #60). The Court further warned Defendants that if the parties did not reach a settlement, Defendants would have until April 10, 2026, to file their opposition, lest the Court would consider Plaintiff's motion unopposed. (*Id.*). The parties have not reached a settlement, and Defendants never filed their opposition papers. The Court therefore considers Plaintiff's motion unopposed.

## DISCUSSION

### A. Unopposed Motions for Summary Judgment

Under Rule 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 248). Furthermore, a particular fact is "material" if it

perplexed by Plaintiff's current assertion that "the 2021 Borrowers still owe over $36,051,942 as of the date of the Motion." (Pl. Br. 21).

"might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The movant "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at 323). The movant can meet that burden in two ways: (i) by offering affirmative evidence that "demonstrate[s] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, or, if the burden of proof would fall on the nonmovant at trial, (ii) by simply "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," *Jaramillo* v. *Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 322-23). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dall. Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

Even where a motion for summary judgment is unopposed, summary judgment may still be denied "[i]f the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production." *Vt. Teddy Bear Co., Inc.* v. *1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Further, in determining whether an unchallenged movant has met its burden, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement." *Id.* Rather, the court "must be satisfied that the citation to evidence in the record supports the

[movant's] assertion." *Id.* (citing *Giannullo* v. *City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2023)).

### B. The Court Grants Summary Judgment to Plaintiff on Counts II, IV, and VI, But Denies Summary Judgment on Counts III, V, and VII

#### 1. Counts Claiming Breach of the Loan Documents

Under New York law, "to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, [i] the existence of a contract between herself and that defendant; [ii] performance of the plaintiff's obligations under the contract; [iii] breach of the contract by that defendant; and [iv] damages to the plaintiff caused by that defendant's breach." *Grewal* v. *Cuneo Gilbert & LaDuca LLP*, No. 13 Civ. 6836 (RA), 2018 WL 4682013, at *4 (S.D.N.Y. Sept. 28, 2018) (internal quotation marks omitted and alteration adopted) (quoting *Diesel Props S.r.l.* v. *Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)), *aff'd*, 803 F. App'x 457 (2d Cir. 2020) (summary order).

"Undisputed evidence reflecting the terms of an agreement, performance by the movant, and the non-movant's failure to make required payments is sufficient to establish breach of contract as a matter of law." *Cap. Constr. Mgmt. of N.Y., LLC* v. *Zaga*, No. 11 Civ. 8112 (PKC), 2012 WL 2188339, at *3 (S.D.N.Y. June 14, 2012) (collecting cases). "[A] plaintiff makes a prima facie case for recovery under a promissory note by providing a copy of the instrument and establishing failure to make payments under its terms." *Id.* at *4 (citing *E. N.Y. Savings Bank* v. *Baccaray*, 625 N.Y.S.2d 88, 89 (2d Dep't 1995)).

Here, the Borrowers admit both the enforceability of the Loan Documents and their failure to make timely payments owed to the Security Trustee thereunder. But the Security Trustee has not established damages with respect to breaches of the 2021 Loan Documents because the Security Trustee admits that the August 30, 2024 collateral sale "fully satisfied" the 2021 Obligations, including principal, interest, and expenses. (Pl. 56.1 ¶¶ 59, 62). Consequently, Plaintiff is entitled to summary judgment on Count II but not Count III.

**a. Plaintiff Is Entitled to Summary Judgment on Its Claim That the 2020 Borrowers Are Liable for Breach of the 2020 Loan Agreements**

Based on the undisputed facts, the 2020 Lender financed the 2020 Borrowers' purchase of the 2020 Assets for use in the 2020 Borrowers' operations. (Pl. 56.1 ¶¶ 1, 6). The 2020 Borrowers admit the authenticity of the 2020 Loan Documents and that they executed those Loan Documents. (Green Decl., Ex. M ("VQBWS RFA Responses"), ¶¶ 1-6; *id.*, Ex. N ("VQBWT RFA Responses"), ¶¶ 1-6). The 2020 Lender extended credit to the 2020 Borrowers under the 2020 Loan Documents, thus fulfilling the 2020 Lender's obligations under those documents. (VQBWS RFA Responses ¶¶ 7-10; VQBWT RFA Responses ¶¶ 7-10).

Moreover, the 2020 Borrowers also entered into the 2020 Omnibus Amendment and the 2020 Amendment 2. (VQBWS RFA Responses ¶¶ 23-25, 34-35; VQBWT RFA Responses ¶¶ 23-25, 34-35). The 2020 Lender subsequently extended credit to the 2020 Borrowers under the 2020 Omnibus

Amendment and the 2020 Amendment 2, thus fulfilling the 2020 Lender's Obligations under the two supplemental agreements. (VQBWS RFA Responses ¶¶ 26-29, 31-32; VQBWT RFA Responses ¶¶ 26-29, 31-32). There is thus no dispute regarding the 2020 Borrowers' obligations under the 2020 Loan Documents and the 2020 Lender's discharge of its obligations under these same agreements, the first two requirements of a breach of contract claim. *See Grewal*, 2018 WL 4682013, at *4.

On the question of breach, the 2020 Borrowers have failed to remit payments to the 2020 Lender. (VQBWS RFA Responses ¶¶ 58-61; VQBWT RFA Responses ¶¶ 58-61). Further, they have failed to deliver annual audited financial statements, quarterly certified financial statements, and Monthly Reports when due, which failures constitute additional events of default. (VQBWS RFA Responses ¶¶ 69-85; VQBWT RFA Responses ¶¶ 69-85).

Finally, the undisputed facts confirm that the 2020 Borrowers' defaults have damaged the 2020 Lender. Specifically, there remains a substantial outstanding balance that the 2020 Lender has not been able to recover. (Pl. 56.1 ¶ 72). Accordingly, Plaintiff has established each element of its claim for breach of the 2020 Loan Agreement against the 2020 Borrowers. *See Grewal*, 2018 WL 4682013, at *4. Plaintiff is therefore entitled to summary judgment on Count II and an award of damages in the amount of $36,051,942.

**b. Plaintiff Is Not Entitled to Summary Judgment on Its Claim That the 2021 Borrowers Are Liable for Breach of the 2021 Loan Agreements**

Plaintiff's claim with respect to the 2021 loan arrangement features one key difference — the 2021 Obligations have been fully satisfied. That fact ultimately dooms Plaintiff's motion for summary judgment on Count III (as well as Counts V and VII).

Based on the undisputed facts, the 2021 Lender financed the 2021 Borrowers' purchase of the 2021 Assets and the 2023 Assets for use in the 2021 Borrowers' operations. The 2021 Borrowers admit the authenticity of the 2021 Loan Documents and their execution of those documents. (Green Decl., Ex. O ("VQBWL RFA Responses"), ¶¶ 40-45; *id.*, Ex., Ex. P ("VQBWM RFA Responses"), ¶¶ 40-45; *id.*, Ex. Q ("VQBZV RFA Responses"), ¶¶ 40-45; *id.*, Ex. R ("JOX 28551 RFA Responses"), ¶¶ 40-45). Moreover, the 2021 Borrowers also entered into the 2021 Omnibus Amendment and the 2021 Amendment 2. (VQBWL RFA Responses ¶¶ 46-51; VQBWM RFA Responses ¶¶ 46-51; VQBZV RFA Responses ¶¶ 46-51; JOX 28551 RFA Responses ¶¶ 46-51).

The 2021 Lender extended credit to the 2021 Borrowers under the 2021 Loan Documents, thereby fulfilling its obligations under those documents. (Pl. 56.1 ¶ 22). There is thus no dispute of fact regarding the 2021 Borrowers' obligations under the 2021 Loan Documents and the 2021 Lender's correlative discharge of its obligations, the first two requirements for a breach of contract claim. *See Grewal*, 2018 WL 4682013, at *4.

But that does not mean that Plaintiff is entitled to summary judgment. While the 2021 Borrowers initially failed to make payments to the 2021 Lender (VQBWL RFA Responses ¶¶ 91-93; VQBWM RFA Responses ¶¶ 91-93; VQBZV RFA Responses ¶¶ 91-93; JOX 28551 RFA Responses ¶¶ 91-93), Plaintiff admits that the 2021 Borrowers "fully satisfied the outstanding balance under [the 2021] Loan Agreement" after the August 30, 2024 collateral sale (Pl. 56.1 ¶ 62). Plaintiff has thus not established damages as a matter of law. *See Med. Rsch. Assocs., P.C.* v. *Medcon Fin. Servs., Inc.*, 253 F. Supp. 2d 643, 649 (S.D.N.Y. 2003) (denying summary judgment "on the basis that [the plaintiff] [could not] prove that it suffered damages, an essential element of a cause of action for breach of contract"); *CapLOC, LLC* v. *McCord*, No. 17 Civ. 5788 (AT), 2020 WL 1036044, at *20 (S.D.N.Y. Mar. 3, 2020) (denying summary judgment on breach of contract claim because of "a triable issue as to whether [the movant's] alleged breach of the ... agreement caused reliance damages").

To be sure, Plaintiff establishes other breaches — namely, that the 2021 Borrowers failed to deliver annual audited financial statements, quarterly certified financial statements, and Monthly Reports when due, which constitute events of default under the 2021 Loan Agreements. (VQBWL RFA Responses ¶¶ 91-115; VQBWM RFA Responses ¶¶ 91-115; VQBZV RFA Responses ¶¶ 91-115; JOX 28551 RFA Responses ¶¶ 91-115). But Plaintiff has not established that it suffered damages as a result of those Events of Default. Consequently, given the fact that the 2021 Obligations have been fully satisfied, the Court cannot grant summary judgment in favor of Plaintiff on Count III.

**2. Counts Claiming Breach of the Guaranties**

The Court next turns to Plaintiff's counts that allege breaches of the 2020 Guaranty and the 2021 Guaranty. "To prevail on a motion for summary judgment to enforce a guaranty, a creditor must prove 'an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty.'" *ATX Debt Fund 1, LLC* v. *Paul*, No. 19 Civ. 8540 (JPO), 2024 WL 324780, at *4 (S.D.N.Y. Jan. 29, 2024) (quoting *Gansevoort 69 Realty LLC* v. *Laba*, 12 N.Y.S.3d 543, 543 (1st Dep't 2015); *see also HSH Nordbank AG N.Y. Branch* v. *Street*, 421 F. App'x 70, 72 (2d Cir. 2011) (summary order). A guarantee is simply "a promise to fulfill the obligations of another party," and is thus also "subject 'to the ordinary principles of contract construction.'" *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A.* v. *Navarro*, 25 N.Y.3d 485, 492 (2015) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 34 (2d Cir. 1999)).

**a. Plaintiff Is Entitled to Summary Judgment on Its Claim That the Guarantor Breached the 2020 Guaranty**

As detailed above, to further secure Borrowers' performance under the 2020 Loan Documents, the Guarantor executed the 2020 Guaranty. (Pl. 56.1 ¶¶ 9-10). The Guarantor admits the authenticity and execution of the 2020 Guaranty. (Green Decl., Ex. S ("Guarantor RFA Responses") ¶¶ 37-39, 55-57). There is thus no dispute that the 2020 Guaranty is fully enforceable. *See, e.g.*, *Navarro*, 25 N.Y.3d at 493 ("Guaranties that contain language obligating the

guarantor to payment without recourse to any defenses or counterclaims … have been consistently upheld by New York courts[.]" (collecting cases)).

The Court has already established, *supra*, that the 2020 Borrowers breached the 2020 Loan Documents by failing to timely pay the Lenders and failing to provide certain financial disclosures. The Court has also established, *supra*, that there is certain outstanding debt resulting from the 2020 Borrowers' defaults. Finally, as of the date of this Motion, the Guarantor has not fulfilled the 2020 Obligations. (Pl. 56.1 ¶ 64). The Security Trustee is thus entitled to summary judgment against the Guarantor on Count IV for breach of the 2020 Guaranty, in the amount of $36,051,942. *See, e.g.*, *North Hill Funding of N.Y., LLC* v. *Maiden & Madison Holdings, LLC*, 911 N.Y.S.2d 694 (Table), 2010 WL 2305485, at *8 (Sup. Ct., N.Y. Cnty., May 3, 2010) (granting summary judgment to the lender for breach of guaranty because the guarantor did not contest the execution of loan documents and the failure to make full payment thereunder); *Hotel 71 Mezz Lender LLC* v. *Mitchell*, 880 N.Y.S.2d 67, 68-69 (1st Dep't 2009) (affirming summary judgment under the guaranty where the lender established an underlying loan to the borrower, execution by the defendant of a personal guaranty, and the borrower's default); *Cont'l Airlines, Inc.* v. *Lelakis*, 943 F. Supp. 300, 304 (S.D.N.Y. 1996) (granting summary judgment under the guaranty when the guarantor did not dispute the terms of the guaranty or that payments were due and outstanding under the underlying note).

**b. Plaintiff Is Not Entitled to Summary Judgment on Its Claim That the Guarantor Breached the 2021 Guaranty**

The Court cannot reach the same conclusion, however, on Count V, which seeks to establish the Guarantor's liability for breach of the 2021 Guaranty. As the Court discussed, *supra*, Plaintiff admits that the 2021 Obligations have been "fully satisfied." (Pl. 56.1 ¶ 62). Accordingly, Plaintiff has not established the existence of an underlying debt secured by the 2021 Guaranty. *See ATX Debt Fund 1, LLC*, 2024 WL 324780, at *4. Plaintiff is thus not entitled to summary judgment on its claim that the Guarantor breached the 2021 Guaranty. *See Myers Indus., Inc.* v. *Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 121 (S.D.N.Y. 2021) ("The Plaintiffs fail to state a claim against [the guarantor] for breach of guaranty because they have not alleged any underlying debt.").

**3. Counts Seeking Foreclosure**

The last set of counts on which Plaintiff seeks summary judgment are its claims for foreclosure of the 2020 Assets (Count VI) and for foreclosure of the 2021 Assets and 2023 Assets (Count VII). Following a now familiar pattern, the Court grants summary judgment to Plaintiff with respect to the 2020 Assets, but not with respect to the 2021 Assets and 2023 Assets.

Under the New York Uniform Commercial Code, "[a]fter default, a secured party… may reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest … by any available judicial procedure." N.Y. U.C.C. Law § 9-601(a). "To establish entitlement to judgment as a matter of law 'in an action to foreclose a security agreement, the movant must submit

proof of the existence of the loans, notes, and security agreement, and proof of default.'" *Stichting* v. *Capstone Credit, LLC*, No. 21 Civ. 2102 (LGS), 2022 WL 18027614, at *9 (S.D.N.Y. Dec. 30, 2022) (quoting *Gera* v. *All-Pro Athletics, Inc.*, 870 N.Y.S.2d 87, 88 (2d Dep't 2008)).

**a. Plaintiff Is Entitled to Foreclosure of the 2020 Assets**

Here, as established, *supra*, the Security Trustee has produced the 2020 Loan Documents, and the 2020 Borrowers have defaulted thereunder. (Pl. 56.1 ¶¶ 1-6, 13-16). The 2020 Loan Documents create a valid security interest in the 2020 Assets, which has vested in the Security Trustee. (2020 Security Agreement § 1.01 & Schedule I). The Security Trustee is thus entitled to foreclosure as a matter of law with respect to the 2020 Assets. *See Stichting*, 2022 WL 18027614, at *9. The Court therefore grants Plaintiff's motion for summary judgment on Count VI.

**b. Plaintiff Is Not Entitled to Foreclosure of the 2021 Assets or the 2023 Assets**

The same cannot be said for Count VII, which seeks foreclosure of the 2021 Assets and the 2023 Assets. It is undisputed that the 2021 Loan Documents created a valid security interest in the 2021 Assets and 2023 Assets, which interest has vested in the Security Trustee. (2021 Aircraft Security Agreement § 1.01 & Schedule I; 2021 Supplement 9, at 1-2). But it is also undisputed that the 2021 Obligations have been "fully satisfied." (Pl. 56.1 ¶ 62). "[A] security interest cannot survive the debt's extinguishment[.]" *DW Last Call Onshore, LLC* v. *Fun Eats & Drinks LLC*, No. 17 Civ. 962 (JMF), 2019 WL 13414939, at *7 (S.D.N.Y. Mar. 11, 2019) (internal quotation marks

omitted) (quoting *Roswell Cap. Partners LLC* v. *Beshara*, 436 F. App'x 34, 36 (2d Cir. 2011) (summary order)). Consequently, Plaintiff has not established a "proof of default" as a matter of law that would entitle it to foreclosure on the 2021 Assets or the 2023 Assets. *See Stichting*, 2022 WL 18027614, at *9 (quoting *Gera*, 870 N.Y.S.2d at 88).

**CONCLUSION**

For the reasons explained above, Plaintiff's motion for summary judgment on Counts II through VII of the Complaint is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff is entitled to summary judgment on Counts II, IV, and VI. But Plaintiff is not entitled to summary judgment on Counts III, V, and VII, which must proceed to trial.

On or before **August 17, 2026**, the parties shall file a joint status update to inform the Court of next steps in the litigation.

The Clerk of Court is directed to terminate the pending motion at docket entry 46.

SO ORDERED.

Dated: August 3, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge